18h 521
L-ed 474
19h 383
20h 578
24h 522
10wa453
18f 22
21f 564
23f 651.
36f 839
41t 880

WILLIAM STAIRS AND ANOTHER, PLAINTIFFS, *v.* CHARLES H. PEASLEE.

The tariff act of March 3, 1851, (9 Stats. at Large, 629,) repealed so much of the former laws as provided that merchandise, when imported from a country other than that of production or manufacture, should be appraised at the market value of similar articles at the principal markets of the country of production or manufacture, at the period of the exportation to the United States.

It must be appraised according to the value of the goods in the principal markets of the country from which they are exported.

Therefore cutch, which is a product of the East Indies only, and the great market for which, there, is Calcutta, must be appraised, not according to its value there, but at London and Liverpool, which are the principal markets of Great Britain, exclusive of India; and not at Halifax, from which place it was brought into the United States.

The word "country," mentioned above, embraces all the possessions of a foreign state, however widely separated, which are subject to the same supreme executive and legislative control.

It is for the merchant appraisers to decide what markets in these dominions are the principal ones for the goods in question, and their decision is final.

The penal duty of twenty per centum exacted by the 8th section of the tariff act of July 30, 1846, (9 Stats. at Large, 43,) is properly levied upon goods entered at their invoice value, if it is found to be ten per cent below the dutiable value, as well as those goods where the importer makes an addition to the invoice value.

The case of Bartlett *v.* Kane, 16 How. 263, commented upon.

THIS case came up, on a certificate of division in opinion between the judges of the circuit court of the United States for the district of Massachusetts.

The facts are stated in the opinion of the court.

It was argued by *Mr. Griswold*, for the plaintiffs, and *Mr. Gillet*, for the defendant.

*Mr. Griswold's* first and fourth points were as follows:—

1. The tariff act of March 3, 1851, did not repeal so much of former laws as provided that merchandise, when imported from a country other than that of production or manufacture, should be appraised at the market value of similar articles at the principal markets of the country of production or manufacture, at the period of the exportation to the United States. But that the provision in the 16th section of the tariff act of 1842 is still in force. Act Aug. 30, 1842, c. 270, § 16, 5 Stats. at Large, 564; Act March 3, 1851, c. 38, § 1, 9 Ib. 629; Act July 30, 1846, c. 74, § 8, 9 Ib. 43.

(*a*) Because congress in passing the tariff act of March 3, 1851, did not intend to repeal or modify the proviso in the 16th section of the tariff act of August 30, 1842. But only so much of the main body of the section as provided that merchandise, when imported from the country of production or manufacture, should be liable to duty on the appraised value at the time when purchased.

And the intention, if it can be ascertained, must govern in the interpretation of these statutes. Greely *v.* Thompson et al. 10 How. 225; Norcross *v.* Greely, 1 Curtis, 116; Barnard et al. *v.* Morton, Ib. 409.

(*b*) Because the act of March 3, 1851, was passed in consequence of the decision by this court, in the case of Greely *v.* Thompson et al. 10 How. 225, and Maxwell *v.* Griswold, Ib. 242, to the effect that by the 16th section of the tariff act of

August 30, 1842, merchandise, when imported from the country of production or manufacture, was liable to duty on the appraised value thereof at the time when purchased, and not at the period of the exportation, as had been claimed by the secretary of the treasury.

And the intention of congress was simply to change the time with reference to which the value should be appraised, from the time when purchased, to the period of the exportation. Greely *v.* Thompson et al. 10 How. 225; Maxwell *v.* Griswold et al. 10 Ib. 242; Norcross *v.* Greely, 1 Curtis, 116; Barnard et al. *v.* Morton, Ib. 409; 1 Kent's Com. 462; Act March 3, 1851, c. 38, § 1, 9 Stats. at Large, 629; Act July 30, 1846, c. 74, § 8, 9 Ib. 43; Act Aug. 30, 1842, c. 270, § 16, 5 Ib. 564; Act March 1, 1823, c. 21, § 5, 3 Ib. 733; Act May 19, 1828, c. 55, §§ 8, 9, 4 Ib. 274; Act July 14, 1832, c. 227, § 7, 4 Ib. 592.

(*c*) Because sect. 1 of the tariff act of March 3, 1851, is not repugnant to, or inconsistent with, the provisio in the 16th section of the tariff act of August 30, 1842, but is cumulative, and should be construed with it, *in pari materia.* United States *v.* Sixty-seven Packages of Dry Goods, 17 How. 93; Wood *v.* United States, 16 Pet. 364; United States *v.* Freeman, 3 How. 564; Daviess et al. *v.* Fairbairn et al. Ib. 646; Morlot *v.* Lawrence, 1 Blatch, 612; Saving Institution *v.* Makin, 23 Maine, 360.

4. If the court shall hold that the appraisements of the cutch were legally made, still the additional duty of twenty per centum under the 8th section of the act of 1846 was wrongfully exacted by the defendant.

(*a*) Because the additional duty provided by the 8th section of the act of 1846 applies only in cases where the importer or consignee, on entry of merchandise, has voluntarily added to the invoice value. Act 1846, c. 74, § 8, 9 Stats. at Large, 43; Kreisler *v.* Morton, 1 Curtis, 415.

(*b*) Because the 17th section of the act of 1842 is still in force, and this imposes, on merchandise which has been procured by purchase, an additional duty of fifty per cent. of the duty prescribed by law, in case the appraised value thereof exceeds by ten per cent., or more, the invoice value; and this section embraces and applies to all cases of purchased goods, where the owner, importer, or consignee has not, on entry thereof, voluntarily added to the invoice value. Kreisler *v.* Morton, 1 Curtis, 415; Act 1846, § 8, 9 Stats. at Large, 43.

(*c*) Because the 8th section of the act of 1846 secures to owners, importers, and consignees of imports which have been actually purchased, the right of making such additions to the invoices on entry thereof, as shall, in their opinion, raise the

same to the true market value of such imports in the principal markets, &c., &c.—(a privilege not enjoyed under the 17th section of the act of 1842;)—and it also provides that if the owner, importer, or consignee, having availed himself of this privilege, fails to make a sufficient addition to his invoice, he shall pay an additional duty of twenty per cent. on the appraised value—a severer penalty than is inflicted by the 17th section of the act of 1842.

(*d*) Because the additional duty provided by the 17th section of the act of 1842 is not inconsistent with, or repugnant to, that in the 8th section of the act of 1846; because the latter is only applicable to cases of declarations of increased values voluntarily made by the owner, consignee, or agent on entry.

(*e*) Because the basis of appraisement by the two sections are entirely different.

By the 17th section of the act of 1842, if the appraised value exceed by ten per cent. or more, the invoice value, then fifty per cent. of the duty prescribed by law is to be added; while by the 8th section of the act of 1846, if the appraised value exceed by ten per cent. or more, the value declared in the entry, then an additional duty of twenty per cent. on the appraised value shall be assessed.

Mr. Chief Justice TANEY delivered the opinion of the court.

This case comes before the court upon a certificate of division in opinion between the judges of the circuit court of the United States for the district of Massachusetts.

It is an action for money had and received, brought by the plaintiffs, who are merchants, resident and doing business at Halifax, Nova Scotia, to recover of the defendant, the collector of customs for the port of Boston, money alleged to have been illegally exacted on payment of duties on fifty bags of cutch, shipped by the plaintiffs at Halifax, consigned to Messrs. Clark, Janes, and Co., of Boston.

The invoice was dated at Halifax, November 10, 1853, and the cutch was entered at the custom-house, Boston, on the 16th of the same month, at the invoice value.

The value of the cutch, as appraised by the United States appraisers, exceeded by ten per centum the invoice value; and the plaintiff appealed, and a reappraisement was had by two merchant's appraisers, and their appraisement also exceeded by ten per centum the invoice value; whereupon the defendant assessed a duty of ten per centum *ad valorem* on the appraised value, and also an additional duty or penalty of twenty per centum on the same value, under the 8th section of the tariff act of July 30, 1846.

It was proved that the cutch was the product of the East Indies only, and that Calcutta was the great market of the country of production. And it appeared on the trial that this fact was known to the appraisers when the appraisement was made. It was also proved that London and Liverpool were the principal markets of Great Britain, exclusive of India, for said article; and, so far as appeared at the trial, this cargo was the only one known to have been sold in, or exported from, Halifax.

It was also proved that the appraisers appraised the cutch at its market value in London and Liverpool, and not at Halifax or Calcutta, at the period of its exportation from the port of Halifax to the United States.

The case coming on to be tried, it occurred as a question:—

1. Whether the tariff act of March 3, 1851, repealed so much of all former laws as provided that merchandise, when imported from a country other than that of production or manufacture, should be appraised at the market value of similar articles at the principal markets of the country of production or manufacture, at the period of the exportation to the United States.

On which question the opinions of the judges were opposed.

2. Whether, in estimating the dutiable value of the cutch, the appraisers should have taken the value at the market of Calcutta, or London and Liverpool, or Halifax, at the period of the exportation from Halifax.

On which question the opinions of the judges were also opposed.

3. Whether, if the appraisements were legally made, the additional duty of twenty per centum, under the 8th section of the tariff act of July 30, 1846, was rightfully exacted by the defendant.

On which question the opinions of the judges were opposed.

Wherefore, upon the motion of the plaintiffs, the points were certified to this court for final decision.

The first question certified by the circuit court depends altogether upon the construction of the act of 1851, 9 Stats. at Large, 629.

The language of this act of congress is general, and embraces all importations of goods that are subject to an *ad valorem* duty; and directs that their value shall be estimated and ascertained by the wholesale price at the period of exportation to the United States, in the principal markets of the country from which they are imported. The time and the place to which the appraisers are required to look, when making their appraisement, are both distinctly specified in the law—the time being the period of exportation, and the place the country from which they were imported into the United States. It makes no

reference to their value in the country of production, or the time of purchase. And as there is no ambiguity in the language of the act, and it embraces all goods subject to an *ad valorem* duty, the court would hardly be justified in giving a construction to it narrower than its words fairly import.

It is true, as urged by the counsel for the plaintiff, that in the previous laws upon the same-subject, the country of production or manufacture was the place to which the appraisers were referred in order to ascertain their value. And undoubtedly the previous acts of congress, and the policy which they indicate, are proper to be considered in interpreting the act of 1851, and might influence its construction, if its language was found to be ambiguous. But that is not the case in the present instance. The law taken by itself will admit of but one construction—and that is, the appraisement must be made, by the value of the goods in the principal markets of the country from which they are exported, at the time of such exportation to the United States. And, so far as these provisions are inconsistent with the provisions of previous laws, they show that congress had changed its policy in this respect, and intended to repeal the laws by which it had been established.

As regards the second point certified, the word country in the revenue laws of the United States has always been construed to embrace all the possessions of a foreign State, however widely separated, which are subject to the same supreme executive and legislative control. The question was brought before the treasury department in 1817; and, on the 29th of September in that year, instructions were issued by the department, in a circular addressed to the different collectors, in which the construction above stated is given to the word. The practice of the government has ever since conformed to this construction; and it must be presumed that congress, in its subsequent legislation on the subject, used the word according to its known and established interpretation.

Apart, however, from this consideration, we regard the construction of the treasury department as the true one. Congress certainly could not have intended to refer to mere localities or geographical divisions, without regard to the state or nation to which they belonged. For, if the word country were used in that sense, the law furnishes no certain and fixed limits to guide the appraisers in determining what are its principal markets; and it would often be difficult to decide whether the market selected by appraisers, to regulate the value, was actually within the limits of the country from which the exportation was made. And, moreover, if the construction contended for by the plaintiff could be maintained, it would soon be found that goods would

not generally be exported directly to the United States, from the principal market where they were procured, but sent to some other place where they were not in demand, to be shipped to this country, and invoiced far below their real value. The case before us shows what may be done to evade the payment of the just amount of duty; and neither the words of any revenue law, nor any policy of the government, would justify a construction alike injurious to the public and to the fair and honest importer.

It follows, therefore, as the cutch in question was shipped and invoiced from Halifax, that it was the duty of the appraisers to estimate and appraise it according to its value in the principal markets of the British dominions. What markets within these dominions were the principal ones for an article of this description was a question of fact, not of law, and to be decided by the appraisers, and not by the court. They, it appears, determined that London and Liverpool were the principal markets in Great Britain for the goods in question, and appraised the cutch according to its value in these markets. And as the appraisers are by law the tribunal appointed to determine this question, their decision is conclusive upon the importer as well as the government.

The third point presents a question of more difficulty.

By the act of congress of 1842, (5 Stats. at Large, 563,) it was provided that in cases where goods purchased were subject to an *ad valorem* duty, if the appraisement exceeded the value at which they were invoiced by ten per cent., or more, then in addition to the duty imposed by law on the same, there should be levied and collected on the same goods, wares, and merchandise, fifty per cent. of the duty imposed on the same when fairly invoiced.

It would seem, however, that this provision was found by experience to operate, in some instances, unjustly upon the importer; and that it sometimes happened that, under favorable opportunities of time or place, goods were purchased in a foreign country for ten per cent. less than their market value in the principal markets of the country from which they were imported into the United States. And if they were so invoiced, the importer was liable for the above-mentioned penal duty, although he was willing and offered to make the entry at their dutiable value. The fact that the invoice value was ten per cent. below the standard of value fixed by law, subjected him to the penal duty; and he had no means of escaping from it.

The 8th section of the tariff act of 1846 was obviously intended to relieve the importer from this hardship. It provides that the owner, consignee, or agents of imports which have been actually purchased, may, on entry of the same, make such

addition in the entry, to the cost or value given in the invoice, as, in his opinion, may raise the same to the true market value of such imports in the principal markets of the country whence the importation shall have been made, or in which the goods imported shall have been originally manufactured or produced, as the case may be; and to add thereto all the costs and charges which, under existing laws, would form a part of the true value, at the port where the same may be entered, upon which the duties should be assessed. And the section further provides that if the appraised value shall exceed by ten per cent., or more, the value so declared on the entry, then, in addition to the duties imposed by law, there should be levied a duty of twenty per centum *ad valorem* on such appraised value—with a proviso that in no case should the duty be assessed upon an amount less than the invoice value.

The difficulty has arisen upon the construction of this act. It appears that the goods in question were entered at the value stated in the invoice, without any addition by the importer. That value, upon the appraisement, was found to be more than ten per cent. below their dutiable value. And it has been argued, on behalf of the plaintiff, that the penal duty imposed by this law is incurred in those cases only, in which the importer makes an addition to the invoice value; and that this provision does not embrace cases in which the goods are entered at the invoice cost or value, although that value should be more than ten per cent. below the appraisement.

We think this construction cannot be maintained. It is the duty of the importer to enter his goods at their dutiable value—ascertaining it according to the rules and regulations prescribed by law. The entry required is not a mere list of the articles imported. It must also state their value. And if he enters them at the value stated in the invoice, it is a declaration on his part that such and no more is the amount upon which the *ad valorem* duty is to be paid. It is the value declared on the entry, as much so as if he had availed himself of the privilege conferred by this act of congress, and entered them at a higher value. He is, consequently, subject to the penal duty, if the value declared in the invoice is ten per cent. below the appraisement. And this construction is strengthened by the proviso in the same section, which directs that in no case should the duty be assessed upon a less amount than the invoice value. This provision, it would seem, was introduced upon the principle that the party having admitted the value in the invoice which he produces, (and which he is bound to produce when he makes the entry,) shall not be permitted to deny the truth of the declaration he thus makes, and enter them at a lower value.

Indeed, the plain object and policy of the law would be defeated by the construction contended for. It was evidently the purpose of this section of the act of 1846 to relieve the importer from the hardship to which he was exposed by the act of 1842, where the undervaluation in the invoice arose from error, or from ignorance of the mode of valuation prescribed by the revenue laws of the United States. For, while it gives him the privilege of relieving himself from the penal duty, by entering them at their true dutiable valuation, it would, according to the construction claimed by the plaintiff, hold out to him, at the same time, the strongest temptation not to avail himself of it— as a much higher penal duty would be exacted, when he added to the value in the invoice, if he still fell ten per cent. below the appraisement, than if he had stood upon the invoice itself. For, in the former case, he would be subject to a penal duty of twenty per cent. on the dutiable value of the goods, and, in the latter, would be liable to only fifty per cent. on the amount of duty which he would be required to pay. It would be difficult to assign a reason for such a distinction; and we think none such is made by the law, and that the importer is liable to the penal duty of twenty per cent. wherever the goods are undervalued in the entry; and it matters not whether this undervaluation is found in an entry made according to the value in the invoice, or in an entry at a higher valuation by the importer.

The treasury department in carrying into execution the act of 1846, has given to it the same construction that the court now place upon it; and the penal duty of twenty per cent. has been constantly exacted for an undervaluation in cases where the entry was according to the value stated in the invoice, as well as in cases where an addition had been made by the importer.

In the case of Bartlett *v.* Kane, (reported in 16 How. 263,) the entry was at the invoice price, and as that was found by the appraisers to be ten per cent. below its dutiable value, the penal duty was exacted by the government officers. A portion of the goods were warehoused, and afterwards entered for exportation. And the owner demanded a return of the twenty per cent. as a portion of the duty he had paid, and which he was entitled to have refunded upon the exportation of the goods. The demand being refused, the suit above mentioned was brought against the collector to recover it. But this court held that this penal duty was legally levied by the collector, and legally retained, and the plaintiff failed to recover.

It will be observed that the right of the collector to demand and retain this penal duty for an undervaluation in the invoice, was directly in question in that suit; and if the act of 1846 does not embrace cases of that description, the plaintiff was

undoubtedly entitled to recover. But the point now made was not suggested in the argument, nor noticed in the opinion of the court, nor was any distinction in this respect taken between an undervaluation, in an entry at the invoice value, and an undervaluation where the importer added to the value.

We do not refer to this case as a judicial decision of the question before us; because, although it was in the case, the attention of the court was not called to it. But it certainly may fairly be inferred from it that in 1853, when this case was decided, no doubt had been suggested as to the construction of the act of 1846, and that the mercantile community, and the members of the bar to whom their interests were confided, concurred with the secretary in his construction of the law. And after that construction had been thus sanctioned, impliedly, in a judicial proceeding in this court, and acted on for so many years by all the parties interested, the court think it ought to be regarded as settled, and that what has been done under it ought not to be disturbed, even if this construction was far more doubtful than it is. We shall therefore certify to the circuit court:—

1. That the tariff act of March 3, 1851, repealed so much of the former laws as provided that merchandise, when imported from a country other than that of production or manufacture, should be appraised at the market value of similar articles at the principal markets of the country of production or manufacture at the period of the exportation to the United States.

2. That in estimating the value of the cutch, it was the duty of the appraisers to determine what were the principal markets of the country from which it was exported into the United States, and their decision that London and Liverpool were the principal markets for that article is conclusive.

3. The appraisement appearing to have been legally made, the additional duty of twenty per cent., under the 8th section of the tariff act of July 30, 1846, was rightfully exacted by the defendant.