## Case No. 12,752.

### SHELTON et al. v. AUSTIN.

[1 Cliff. 388.] [1]

Circuit Court, D. Massachusetts. May Term, 1860.

#### CUSTOMS DUTIES—DAMAGE DURING VOYAGE—APPRAISAL.

1. If goods from a foreign country have received damage in the course of the voyage, the importer, in order to obtain a reduction of duties, must demand an appraisal before entry.

2. If he enter the goods at the custom-house at the invoice price before demanding an appraisal, he must pay duties assessed according to the invoice price, and is entitled to no reduction on account of the damage.

[Cited in Kimball v. Goodrich, 10 Wall. (77 U. S.) 452.]

This was an action of assumpsit brought by the plaintiffs [Philo S. Shelton and others] against the defendant [Arthur W. Austin], as collector of the port of Boston, to recover back certain duties, which, as they alleged, the defendant unlawfully exacted of them, and which they paid under protest. The case was presented upon an agreed statement of facts, of which the following is the material part: It was agreed that the plaintiffs imported certain hogsheads, tierces, and barrels of molasses into the port of Boston, in the bark or vessel called the Meldon, from Matanzas, in the island of Cuba; that at the period of exportation of the said molasses from the port of Matanzas, in the island of Cuba aforesaid, it was a sound and sweet article; and that on its importation into the port of Boston the same was soured, and that said souring took place during the voyage aforesaid. It was further agreed that there was a material difference between the value of sweet and sour molasses, at the port of exportation and also at the port of importation; that sweet molasses was of a greater value than sour molasses, and that this molasses was entered at the full value of sweet molasses, and the plaintiffs then demanded to have the damages appraised, ascertained and allowed in the computation of duties; and that thereupon the said defendant caused the same to be appraised and ascertained, but afterward, under instructions of the honorable secretary of the treasury, refused to allow the same, and duties were exacted by him on the invoice value, and were paid, but under protest in writing filed with the said collector at the time of the payment thereof.

Milton Andros, for plaintiffs.

C. L. Woodbury, for defendant.

CLIFFORD, Circuit Justice. All importations subject to an ad valorem duty are required to be appraised at the actual market value or wholesale price, at the period and place of exportation; and, to enable the collector to perform that duty, importers are required to make an entry of their respective importations, which must be accompanied by the invoice, and it is provided that, if the appraised value of the goods exceeds by ten per cent or more the value declared on the entry, then, in addition to the duties imposed by law on the same, there shall be levied, collected, and paid a duty of twenty per centum ad valorem on such appraised value. Whenever the invoice value is too low, the importer is allowed to make whatever additions on the entry he may think proper, so as to bring up the entered value to the requirement of the law of congress, in order to avoid that additional charge, but there is no corresponding provision authorizing the merchant to make any deduction from the invoice valuation, on any pretence whatever.

Short quantity or goods lost or destroyed during the voyage may be deducted, because it cannot be held that such goods ever arrived in port, and the entry at the custom-house is not required to embrace merchandise which was never imported into the United States. Such an entry at the custom-house is required in order that the actual market value of the importation may be appraised and ascertained, and consequently importers are allowed to make such additions to the invoice valuation as may be necessary to make it conform to the truth; but it is provided by the eighth section of the act of the 30th of July, 1846, that under no circumstances shall the duty be assessed upon an amount less than the invoice value, any law of congress to the contrary notwithstanding. 9 Stat. 43; 11 Stat. 199, § 2. Beyond question that provision is still in force, but I am of the opinion that congress never intended that it should have any application whatever to goods damaged during the voyage, or to goods imported which were unaccompanied with the original invoice. Where goods were damaged during the voyage, or were not accompanied with the original invoice of the cost thereof, the importation was subject to appraisement by the act of the 31st of July, 1789, and it was provided that the duties upon such goods should be estimated according to such valuation. 1 Stat. 41, § 16. Similar provision was made by the thirty-seventh section of the act of the 4th of August, 1790, and its benefits were extended to articles charged with a specific duty, whether the duty was levied by number, weight, or measure. 1 Stat. 167. More detailed provision, however, was made upon the subject by the act of the 2d of March, 1799, which is the act relied on by the plaintiffs. 1 Stat. 665. Merchandise damaged during the voyage, or of which entry was incomplete, either for the want of the original invoice or for any other cause, was required by the fifty-second section of that act to be conveyed in the parcels or packages containing the same to some warehouse or storehouse to be designated by the collector, there

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

to remain at the expense and risk of the owner or consignee "until the particulars, cost, or value" was ascertained in the mode or modes therein prescribed. Articles which had been damaged during the voyage, whether subject to a duty ad valorem, or which were chargeable with a specific duty, either by number, weight, or measure, were required to be appraised, and the appraisers were directed to ascertain and certify to what rate per cent the goods were damaged. And it was also provided that the rate or percentage of damage so ascertained and certified should be deducted from the original amount, subject to duty ad valorem, or from the actual or original number, weight, or measure on which the specific duties would have been computed. Importers were required, by the supplemental act passed on the 30th of April, 1818, to declare on oath that the invoice of the goods produced, if the goods were subject to an ad valorem duty, exhibited the true value of the goods at the place from which they were imported, and it also prescribed certain new and important regulations touching the appraisement of imported goods and the collection of ad valorem duties. Among other things, the twelfth section of the act provides that in all cases where the appraised value shall be less than the invoice value the duty shall be charged on the invoice value in the same manner as if no appraisement had been made. But this provision must have reference only to appraisements made on entry at the customhouse, when the entry is required to be accompanied by the invoice, because it is only in such cases that the entry is necessarily based on the invoice, and this construction is greatly strengthened by the consideration that the fifteenth section of the same act makes a special provision for the assessment of duties upon goods damaged in the course of the voyage, and goods taken from a wreck are by that section placed upon the same footing, and in regard to both classes it is expressly provided that before they shall be admitted to entry they shall be appraised in the manner provided by the ninth section of the act which requires the appraisers to report to the collector the true value thereof when purchased, at the place or places from which the same were imported. Comparing the two sections together, therefore, it is obvious that the former has no application whatever to the regular proceedings prescribed for ascertaining and assessing duties upon goods damaged in the course of the voyage, or upon goods taken from a wreck. Prior to the act of the 20th of April, 1818, there was no act of congress admitting wrecked goods to entry under any circumstances, or any provision upon the subject, other than what related to goods damaged during the voyage. That act was extended by the act of the 18th of April, 1820, and was in full force when the appraisement act of the 1st of March, 1823, went into operation.

3 Stat. 563, 736. Nothing can be more certain than the fact that the twenty-first section of the last-named act prohibits goods damaged in the course of the voyage, and goods taken from a wreck, from being admitted to entry until the same shall have been appraised in the manner provided in the sixteenth section of the same act. By the sixteenth section of the act, the appraisers are required to report the true value thereof, according to the fifth section of the act; and by the fifth section of the act it is provided, in effect, that ad valorem rates of duty shall be estimated by adding all charges, except insurance, to the actual cost of the goods, if the same were purchased, or to the actual value thereof if procured otherwise than by purchase, or to the appraised value if the same were appraised, and also a certain per centum on the cost or value, depending as to the rate on the place or country from which the goods were imported.

Reference is made to these details only for the purpose of remarking that goods damaged in the course of the voyage are as clearly required to be appraised before they can be admitted to entry as goods taken from a wreck; and to verify that remark it is only necessary to refer again to the twenty-first section of the act, which, after expressly making that requirement in regard to the latter class, goes on to provide that the same proceedings shall be ordered and executed in all cases where a reduction of duties shall be claimed on account of damage which any goods shall have sustained during the voyage. All such importations are by that act classed with goods taken from a wreck, and are required to be appraised before they can be admitted to entry; and the twenty-first section of the act also provides that, in all cases where the owner, importer, consignee, or agent shall be dissatisfied with such appraisement, he shall be entitled to the privileges provided in the eighteenth section of the act. Recurring to the eighteenth section of the act, it will be seen that it makes provision for an appeal on the part of the merchant, and a second appraisement, and in case the merchant is still dissatisfied it is made lawful for him to refer the case to the secretary of the treasury. But, whenever the case is so referred, the secretary of the treasury is authorized and empowered to decide thereon, or to require further testimony in the case in such manner as he may deem proper, and to order the goods to be entered accordingly.

Appraisement is to be made, in the first place, by the appraisers appointed under the sixteenth section of the act; but in case the merchant is dissatisfied with their report, he may employ, at his own expense, two respectable resident merchants, who, with the government appraisers, shall examine and inspect the goods in question; and after such examination and inspection they are required to report the value thereof, if they agree

therein, and if not, the circumstances of their disagreement to the collector. Where the appraisers disagree, the practice is for the collector to decide the matter in difference by adopting one or the other valuation, as he may deem just, unless the merchant elects to refer the case to the secretary of the treasury; but if he does so elect, the decision of the department is final and conclusive, and the entry must conform to their decision. Belcher v. Linn, 24 How. [65 U. S.] 522; Rankin v. Hoyt, 4 How. [45 U. S.] 327; Stairs v. Peaslee, 18 How. [59 U. S.] 524. Entry of the goods must be made before the duties can be assessed, but it cannot be made during the pendency of any of these proceedings, because it must be founded on the report of the appraisers, if they agree, or if not, on the decision of the collector, or of the secretary of the treasury. Undoubtedly some of the regulations prescribed in the act under consideration are repugnant to the provisions of the fifty-second section of the act of the 2d of March, 1799, so far as the latter have respect to goods damaged during the voyage, and to that extent the provisions of the last-mentioned act must be considered as modified or repealed. None of the provisions of the act of the 1st of March, 1823, however, have any respect to merchandise of which entry has been made incomplete, either for the want of the original invoice or for any other cause, but in respect to all such importations and entries the proceedings must still conform to the antecedent law upon that subject. Whenever a vessel arrives from a foreign port having merchandise on board which is subject to duty, it is incumbent on the master in every case to present his manifest, and notify the collector of the arrival of the vessel; and when that is done, and the owner, importer, consignee, or agent has presented a true invoice of the goods to the collector, he may then demand, if the goods have received damage in the course of the voyage, that the same shall be appraised in the manner prescribed in the regulations contained in the act of the 1st of March, 1823; and if he acquiesces in the report of the appraisers, and does not refer the case to the secretary of the treasury, he may claim, as matter of right, to have the deduction made as prescribed in the fifty-second section of the act of the 2d of March, 1799. Although the goods were damaged in the course of the voyage, yet the importer is not obliged to demand that the same shall be appraised. He may, nevertheless, make entry of the goods in the usual way as sound articles; but in that event the collector has no authority to assess the duties upon an amount less than the invoice value. That rule for the assessment of duties was first prescribed in the act of the 20th of April, 1818, and it has been continued to the present time. 3 Stat. 433; 9 Stat. 213; 11 Stat. 199.

It is insisted by the defendant that this provision in the act of the 30th of July, 1846, operates as a repeal of the fifty-second section of the act of the 2d of March, 1799; but it is obvious that the proposition cannot be sustained.

Looking at the practical operation of the revenue system, it is clear that the two provisions have no necessary connection the one with the other, because they respectively relate to proceedings altogether different. Duties are assessed upon goods entered at the custom-house according to the invoice valuation and the value given in the entry, unless the goods are marked up by the local appraisers. Additions are often made by the local appraisers to the invoice valuation; and in that event the law allows the merchant an appeal to merchant appraisers, whose decision, by the act of the 3d of March, 1851, is declared to be final. But the act of the 3d of March, 1857, re-enacts the proviso contained in the eighth section of the act of the 30th of July, 1846, and extends the limitation to the entered value of the importation, so that under no circumstances can the duty be assessed upon an amount less than the invoice or entered value. On the other hand, goods damaged in the course of the voyage are to be appraised before entry at the custom-house, under the regulations contained in the act of the 1st of March, 1823, and then the entry must conform to that appraisement. Entry in the one case is founded upon the invoice, with such additions thereto as the merchant may see fit to make in order to bring up the valuation to the actual market value, and in the other upon the report of the appraisers. Under the first proceeding, the duties cannot be assessed upon an amount less than the invoice valuation; but under the latter proceeding, the duties must be calculated and assessed according to the report of the appraisers, wholly irrespective of the valuation given in the invoice. Applying these rules of law to the present case, it is obvious that the instructions of the secretary of the treasury to the collector were correct, and that the claim of the plaintiffs cannot be sustained. They did not cause the goods to be appraised under the law applicable to goods damaged in the course of the voyage, and no such appraisement has ever been made; but, instead thereof, they entered the goods at the custom-house according to the invoice valuation, took out a damage warrant, caused the amount of damage to the goods to be appraised and ascertained, and then claimed to have the amount deducted from the invoice and entered value. Referring to the acts of congress already cited, it is clear that the request of the plaintiffs could not be granted either by the collector or by the department without violating a positive law; and it is no answer to this objection to say that the invoice valuation was the full value of the article in a sound state, because that

admission does not give any different character to the proceeding on which the instructions of the secretary of the treasury were based. Protest was made upon the proceedings as they actually took place, and it does not vary the rights of the parties now to admit that the molasses was entered at the full value of sweet molasses.

That admission cannot change the fact that the goods were entered at the custom-house before any appraisement was made according to law, or that the duties were exacted and paid on the invoice valuation; and if not, then clearly the duties could not lawfully be assessed upon any less amount. Several other questions were discussed at the bar which it is not necessary to decide at the present time, as the point ruled will dispose of the case. According to the agreement of the parties, a verdict must be taken for the defendant.

[NOTE. The cause came on for final hearing and, pursuant to the direction of the court, judgment was entered for defendant. That judgment was affirmed by the supreme court, where the cause was carried by writ of error. 5 Wall. (72 U. S.) 113.]