Muser *et al. v.* Magone, Collector.

*(Circuit Court, S. D. New York. December 11, 1889.)*

1. CUSTOMS DUTIES—APPRAISAL—REAPPRAISING BOARD—REVIEW.
    The finding of a reappraising board, constituted under section 2930 of the Revised Statutes, as to the value of imported merchandise, is final and conclusive, and cannot be reviewed by the courts. Citing *Stairs* v. *Peaslee,* 18 How. 521.
2. SAME—CONSTRUCTION OF LAWS—FOREIGN MANUFACTURES IMPORTED FOR SALE.
    Section 9 of the tariff act of March 3, 1883, provides only for cases where an article made in a foreign country is not sold there, but is brought to the United States for sale.
3. SAME—APPRAISAL.
    Section 9 of the tariff act of 1883 does not require a determination as to the cost of each specific bale or cask or bag of goods. It requires only a determination, estimation, or ascertainment of what the value of goods of the kind imported was in the places whence they came at the time of exportation.
4. SAME—EXPENSES OF MANUFACTURE.
    In ascertaining the expenses of manufacturing under section 9 of the act of 1883, there must be included not only the expense of the various processes of manufacture, but also general expenses, such as interest on the capital invested, cost of insurance, salaries of employes, etc.
5. SAME—PROFIT.
    In determining the value of imported goods, "profit" should be considered as an element of value by the appraisers only so far as it enters into the selling price of the goods in the markets of the foreign country from which they were imported.
*(Syllabus by the Court.)*

At Law.

This was an action brought by Richard Muser and others, composing the firm of Muser Bros., against the collector of the port of New York, to recover duties alleged to have been unlawfully exacted of them on certain cotton embroideries imported into the port of New York. Upon the trial it appeared that the cotton embroideries were manufactured at St. Gall, Switzerland. Plaintiffs maintained a branch house at that place. The cloth on which the embroideries were stitched was purchased in the gray state by plaintiffs at Manchester, and received in their warehouse at St. Gall. It was then sent out to various parties at St. Gall who had stitching machines, and stitched according to patterns on designs furnished by plaintiffs, which designs had either been purchased by them in Paris, or made in their St. Gall establishment by designers employed by them. The goods, when stitched, were returned to plaintiffs' warehouse, and, having been examined by their employes to see if they were properly done, were sent out again to a bleacher, to be bleached. When bleached they were brought back to plaintiffs' warehouse, re-examined, cut into strips of suitable size for the American market, ticketed, boxed, and shipped. To carry on this business in St. Gall, plaintiffs had to rent a building, employ a staff of assistants, and pay insurance, and keep a certain amount of capital invested. Upon their invoices, plaintiffs had stated the cost of the cloth, the prices for stitching according to market rates, and the cost of bleaching and finishing. On entry they added 3 per cent. to the invoice price to make market value, but they claimed upon the trial that this addition was not voluntary, but was made to avoid the penalty provided by statute for cases where the appraised value exceeds the entered value by 10 per cent. The appraiser added 7 per cent. to the entered value to make market value. The plaintiffs demanded a reappraisement, upon which the reappraising officers sustained the appraiser, and added 7 per cent. to the entered value. The plaintiffs protested against this addition, and, claiming that the reappraisement was not legally conducted, brought this suit. They offered to show by the testimony of the merchant and general appraiser that the addition had been made to cover a so-called "manufacturer's profit," but the testimony was excluded on the ground that the court could not review the proceedings on a reappraisement. It also appeared upon the trial that there were at St. Gall a class of dealers, called "commissionaires," to whom buyers of embroideries for the American market could give orders, and have the same services performed for them in the manufacture of such goods as those performed in plaintiffs' warehouse at St. Gall. At the close of the case both sides moved for the direction of a verdict. Section 9 of the tariff act of 1883 (22 St. at Large, c. 121, § 9, p. 525) provides that "if, upon the appraisal of imported merchandise, it shall appear that the true and actual market value, and wholesale price thereof, as provided by law, cannot be ascertained to the satisfaction of the appraiser, whether such merchandise be consigned for sale by the manufacturers abroad to his agent in the United States, or for any other reason, it shall be lawful to appraise

the same by ascertaining the cost or value of the materials composing such merchandise at the time and place of manufacture, together with the expense of manufacturing, preparing, and putting up such merchandise for shipment, and in no case shall the value of such merchandise be appraised at less than the total cost or value thus ascertained."

*Charles Curie, William Stanley, Stephen G. Clarke,* and *Edwin B. Smith,* for plaintiffs.

*Edward Mitchell,* U. S. Atty., and *W. Wickham Smith,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*orally.*) When attention was first called to section 9 of the act of 1883, I was of the opinion that it required, in cases where it applied, the determination of the cost of each particular bale of goods upon which duty was to be assessed. In view, however, of the circumstance that most of the goods referred to in section 9 are such as are received and disposed of in the United States by agents only, who frequently, if not universally, are without full knowledge as to all the items entering into the cost of production; and, further, in view of the fact that, if the section were thus interpreted, every single importation might become a subject of contest between the United States and the importer, in which the cost of the goods was to be determined by a jury; and, further, in view of the fact that such a method of determination of the dutiable value of imports is contrary to the entire scheme of the tariff acts, from the beginning,—I have reached the conclusion that section 9 was not intended to require a determination as to the cost of each specific bale or cask or box of goods; that it requires only a determination, estimation, or ascertainment of what the value of goods of the kind imported was in the places whence they came at the time of exportation. That is to be determined, of course, as all other general questions are determined, by an investigation into all such matters as will give the appraisers light upon the subject before them,—is in fact an appraisement, and should be treated as, under the decisions, appraisements are generally treated, that is, regarded as final, except in the case of reappraisement.

While upon this section, it is to be noted that what is to be determined is not the expense to which any particular individual is put, but the whole expense of manufacturing, preparing, and putting up such merchandise, whether such expense is borne by one individual or by several. This requires a statement broad enough to cover not only the cost and value of the raw materials entering into the completed product, and the other items which the importer in this case has specifically stated, to-wit, stitching, bleaching, cutting off, etc., but also other items which are certainly not here stated by the importer, nor specifically, as to these goods, by any one else. Among these items last referred to may be included the expense of keeping the money invested in the raw material tied up until the product is completed; the expense of insuring the raw material while in the hands of the various individuals who are working upon it in order to produce the finished product; the cost of the services of individuals who move this material to and fro between the different

hands that work upon it, who, in each stage of the process of manufacture, examine and oversee it, in order to determine if it is being properly made,—all these items were not included in the statement made by the importer upon the entries or invoices in this case.

I am, however, of the opinion—and that I consider the controlling point of this case—that this importation is not the kind of importation contemplated by section 9 at all. What section 9 is evidently intended to provide for is the case where an article made in a foreign country is not sold there, but is brought to the United States for sale. Such does not appear to be the case here. So far as the evidence shows, any one can go to St. Gall, and can there buy these very cotton embroideries,—not precisely of the same pattern as Mr. Muser's, but he can get a selection from a large variety of assorted patterns, and, upon paying the cost of the cloth, stitching, bleaching, cutting up, and boxing, and the additional charge, he can obtain these goods in St. Gall. He may have to wait for a week, or three weeks, or five or six weeks; but the title to the goods changes hands in St. Gall, and the purchaser may have them delivered to him there, if he chooses to wait and take them. I cannot see, then, that this is an instance of the kind specified in section 9, which contemplates cases where goods are made abroad, but are sold only here. If that is so, and section 9 does not apply to these goods, then the function which was to be discharged in regard to them by the appraiser was to determine their market value,—in the language of section 2902 of the Revised Statutes, to determine "the true and actual market value and wholesale price," and to determine that by all reasonable ways and means in their power. If they made such examination, this court is not warranted, in view of the decision of the supreme court in the case which was cited, *Stairs* v. *Peaslee*, 18 How. 521, in going behind the returns of such appraisers, and undertaking to estimate the value of these goods. I might state at the same time that, in estimating the market value, I see no warrant or authority under either section, whether such estimation was a mere assessment of the market value or an ascertainment of the cost, for their adding, if they did so add, any item for profit. Of course, the expenses which I have referred to are matters proper to be taken into consideration in determining the cost, or in reaching a determination of the market value; but the profit in addition and beyond that, was not properly to be included, except so far as it may be included in the selling price in St. Gall. Whether or not they did so include the profit would, however, involve an examination as to the correctness of their determination as to the market value of these goods, which I do not think, under the decision above cited, we are warranted in doing, any more than in that case the court and jury were entitled to examine into the question whether the appraisers had really selected the principal market of the country of export. Verdict directed for defendant.

The jury rendered a verdict in accordance with the direction of the court.